UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN HOLT and JOSE RUVALCABA,<br><br>Plaintiff,<br><br>v.<br><br>FOODSTATE, INC., dba MEGAFOOD, dba INNATE RESPONSE FORMULAS,<br><br>Defendant. | Case No.: 15cv78 L (JMA)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [ECF No. 21] and GRANTING LEAVE TO AMEND** |

Currently pending is defendant's motion to dismiss plaintiffs' first amended complaint. The motion has been fully briefed and is considered without oral argument.

**I.    Background**

Defendant, Foodstate, Inc. ("Foodstate"), is a producer in the United States of health supplements including the multivitamins at issue. In this case, Plaintiffs Kathleen Holt and Jose Ruvalcaba ("Plaintiffs") purchased and consumed different vitamin products that Defendant produces, One Daily Multivitamin and Men's One Daily. (First Amended Complaint "FAC" ¶ 29, 33, 35, 39.) Plaintiffs allege, on behalf of themselves and all others similarly situated, that Defendant falsely represents that its products are entirely or largely from whole food sources, when in fact they are also derived from

synthetic sources. Next, Plaintiffs argue that the products contain "magnesium stearate, calcium stearate, or any other stearate/stearic acid" that "may be harmful and undesirable to consumers" and which are not on Defendant's product's labels. (FAC ¶ 42.)

Plaintiffs allege five causes of action in the FAC: (1): violation of California's False Advertising Law ("FAL"); (2) violation of California's Sherman Law ("Sherman"); (3) violation of California's Unfair Competition Law ("UCL"); (4) negligent misrepresentation; and (5) intentional misrepresentation. Foodstate now moves to dismiss all claims based on lack of standing to bring claims for products Plaintiffs did not purchase because the unpurchased products are not substantially similar to the products they purchased. Foodstate also moves to dismiss claims based on express and implied preemption and Plaintiffs' alleged failure to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud-based claims.

## II.   Legal Standard for Motion to Dismiss under Rule 12(b)(6)

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all allegations of material fact as true and construe them in light most favorable to the nonmoving party. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Material allegations, even if doubtful in fact, are assumed to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the court need not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (internal quotation marks omitted). In fact, the court does not need to accept any legal conclusions as true. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)

A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). "While a complaint attacked by a Rule

12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Generally, courts may not consider material outside the complaint when ruling on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, documents specifically identified in the complaint whose authenticity is not questioned by parties may also be considered. *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995) (superceded by statutes on other grounds). Moreover, the court may consider the full text of those documents, even when the complaint quotes only selected portions. *Id.* It may also consider material properly subject to judicial notice without converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

As a preliminary matter, Defendants request judicial notice of images of eight of its products taken from Defendant's website. Plaintiff has not opposed the request. Accordingly, the Court will grant Defendants' request and will consider the contents therein. *See Bruton v. Gerber Prods. Co.*, 961 F.Supp.2d 1062, 1075, n. 1 (N.D. Cal. 2013) (granting request to take judicial notice of labels for ten products referenced in the complaint).

///

## III. Discussion

### A. Standing to Assert Claims as to Unpurchased Products

Plaintiff Holt purchased One Daily Multivitamin and Plaintiff Ruvalcaba purchased Men's One Daily. In their FAC, Plaintiffs also include 107 additional Foodstate products that they never purchased in their putative class definition. Foodstate moves to dismiss Plaintiffs' claims, arguing that Plaintiffs lack standing with respect to products they did not purchase. Plaintiffs counter that they have standing to bring claims for unpurchased products that are substantially similar to the products they purchased.

Standing under Article III and the UCL and FAL requires that a plaintiff suffer injury-in-fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products *and* alleged misrepresentations are substantially similar. *Dorfman v. Nutramax Laboratories, Inc.*, 2013 WL 5353043, (S.D. Cal. Sept. 23, 2013) (emphasis added). Although Plaintiffs have not purchased 107 of the other vitamin/supplement products produced by Defendant, the allegations of misrepresentation mimic those made against One Daily Multivitamin and Men's One Daily. Specifically, Plaintiffs allege that 83 of the other products wrongfully purport to contain nutrients from whole food *and* the presence of magnesium stearate, calcium stearate or any other stearate/stearic acid was not disclosed. Additionally, Plaintiffs allege six of the other products wrongfully claim to contain nutrients from whole foods. Lastly, Plaintiffs allege 18 of the final 107 products do not disclose the presence of magnesium stearate, calcium stearate, or any other stearate/stearic acid. These three claims of misrepresentation overlap.

However, Plaintiffs have failed to show that the 107 products are substantially similar to the two purchased products in order to pass muster for standing. Although the ingredients are not required to be identical in order to be substantially similar, the products must contain similar ingredients and must have similar packaging and labeling. *Dysthe v. Basic Research LLC*, 2011 WL 5868307 *4-5 (C.D. Cal. 2011). In *Dysthe*, the

court found that two weight-loss products made by the same manufacturer were not substantially similar because they contained significant different ingredients. *Dysthe*, WL 5868307 at *4. The first product contained 19 ingredients, while the second contained ten. Although there was some overlap of ingredients, it did not amount to the standard needed to satisfy standing. Additionally, both products contained different percentage daily values of the ingredients within them. In the present case, there is overlap of some ingredients in some of the products; however, Plaintiffs have failed to show that there is substantial similarity amongst all of the 109 products.

The court in *Dysthe* also looked at the packaging to distinguish the products. *Dysthe*, 2011 WL 5868307 at *5. The packaging of the products differed in color and text. Similarly, the packaging in this case is significantly different between even the two consumed products, let alone the 107 additional products. Because plaintiffs have not alleged that the unpurchased products are substantially similar to the products plaintiffs purchased, defendant's motion to dismiss based on lack of standing will be granted. Plaintiffs will be given an opportunity, however, to amend their complaint to cure the deficiencies noted if they are able to do so.

**B. Preemption**

Defendant argues that Plaintiffs' claims are expressly and impliedly preempted by federal law. (Def.'s Mot. Dismiss 10.) Defendant first contends that the Nutrition, Labeling, and Education Act ("NLEA"), a 1990 amendment to the Food, Drug and Cosmetic Act ("FDCA"), expressly preempts Plaintiffs' claim. Further, Defendant argues that Plaintiffs' state law fraud claims are barred by implied preemption because the claims conflict with the FDCA's enforcement scheme and improperly seek to have the Court play the role of the FDA.

**1. Express Preemption Under the FDCA**

Defendant contends that Plaintiffs' claims are expressly preempted by federal law. (Def's. Mot. Dismiss 10.) Defendant supports this contention by asserting the NLEA, an amendment to the FDCA, expressly preempts Plaintiffs' attempt to impose food labeling

requirements not identical to those set forth under federal law. Defendant argues that Plaintiffs seek to impose liability on Defendant for omitting label information not required by federal law but instead, for Plaintiffs' "articulation of consumer preferences." (Def.'s Mot. Dismiss 11.) Specifically, Defendant contends that federal law allows magnesium stearate, calcium stearate or any other stearate/steric acid to be included in food as "incidental additives" if in "insignificant amounts." (*Id.* at 11.) 21 C.F.R. 101.100(a)(3)(ii) provides that "incidental additives that are present in a food at insignificant levels and do not have any technical or functional effect in that food" need not be included on the ingredient label. But Plaintiffs counter that their claims are consistent with requirements under federal law because the question is whether an additive is included at a significant level which is a factual question, better suited for summary judgment or trial. (Pls'. Opp'n. at 11.)

"It is well established that the party who asserts that a state law is preempted bears the burden of so demonstrating." *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1088 (2008). Such a presumption may be difficult to overcome when, "[i]n all preemption cases, and particularly in those in which Congress has 'legislated...in a field which the States have traditionally occupied,'" we "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). "'[C]onsumer protection laws such as the [UCL], false advertising law, and CLRA, are within the states' historic police powers and therefore are subject to the presumption against preemption.' Laws regulating the proper marketing of food, including the prevention of deceptive sales practices, are likewise within states' historic police powers." *In re Farm Raised Salmon Cases*, 42 Cal. 4th at 1088 (quoting the appellate court, *In re Farm Raised Salmon Cases*, 48 Cal. Rptr. 3d 449, 453 (2006)).

Adding to this presumption against preemption, there is no indication that Congress intended the NLEA to preempt the state labeling requirements at issue in this

case. The congressional notes point to the opposite conclusion: "[t]he Nutrition Labeling and Education Act [NLEA] of 1990 shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A of the Federal Food, Drug, and Cosmetic Act [codified as 21 U.S.C.A. § 343–1]." NLEA, PUB.L. NO. 101–535, § 6(c)(1), 104 Stat. 2353.

The NLEA section on preemption, 21 U.S.C.A. § 343–1, states that "except as provided in subsection (b) of this section, no State… may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce" followed by a list of areas in which states may not enact laws in conflict with the federal laws. These areas of food labeling which are expressly preempted fall under 21 U.S.C.A. § 343's "Misbranded Foods" section. Included in this list are things such as offer for sale under another name, imitation of another food, misleading container, etc." Noticeably absent from the express preemption section of 343-1, however, is "false or misleading label." Therefore, the Sherman Law, UCL, and FAL state law claims brought by Plaintiffs, which are predicated on the basis that Defendant's products' labels are either false or misleading, are not expressly preempted by the FDCA.

Next, Defendant contends that magnesium stearate, calcium stearate, and any other stearate/stearic acid do not need to be labeled because 21 C.F.R. §101.100(a)(3)(ii) states that incidental additives are exempt from labeling requirements if at insignificant levels. (Def.'s Mot. Dismiss 10.) As Plaintiffs argue, however, whether these additives are present in insignificant levels is a question of fact, not suited for dismissal at a preliminary stage in the proceeding. The Court agrees and finds that plaintiffs' claims are not expressly preempted. Defendant's motion to dismiss plaintiffs' claims as expressly preempted will be denied.

### 2. Implied Preemption by the FDCA
#### i. Conflict with the FDCA Enforcement Scheme

Defendant argues that even if Plaintiffs' claims are not expressly preempted, they are impliedly preempted because they conflict with the FDCA's enforcement scheme.

(Def.'s Mot. Dismiss 12.) Such a conflict would show Congress' intent for the federal government to occupy the field of food and beverage labeling. *Lockwood v. Conagra Foods, Inc*, 597 F.Supp.2d 1028 (N.D. Cal. 2009). This "intent may be inferred from a 'scheme of federal regulation…so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' or where an Act of Congress 'touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on that subject.'" *English v. General Electric Co.,* 496 U.S. 72, 79 (1990) (citation omitted).

Defendant's assertion that Plaintiffs' claims conflict with the FDCA's enforcement scheme is belied by the NLEA. The preemption provisions added to the FDCA by the NLEA include an express savings clause that disavows any implied preemption: "The NLEA shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under 21 U.S.C. §343-1(a)." Pub.L. No. 101-535, §6(c)(1)(21 U.S.C. §343-1 note). "Congress has explicitly stated that it does not intend to occupy the field of food and beverage nutritional labeling; instead it permits states to regulate subject matters covered by the NLEA and its regulations provided that such state laws do not fall within the FDCA's express preemption provisions." *Lockwood* at 1032. Lastly, Defendant gives no explanation as to *how* Plaintiffs' claims conflict with the FDCA's enforcement scheme.

### ii.     Private Action Against the FDCA

Although citizens may petition the FDCA to take administrative action, private enforcement of the statute is barred. 21 U.S.C.A §337(a): "All such proceedings for the enforcement, or to restrain violations, of the Act shall be by and in the name of the United States." *Id.*

Defendants allege that Plaintiffs' claims are preempted because there is no private right of action to enforce FDA regulations. (Def.'s Mot. Dismiss 13.) Specifically, all claims for violations of the FDCA must be brought in the name of the United States. *Id.* Defendant argues that the FAC contains lengthy discussion of defendant's alleged

violations of the FDA and various CFRs, thereby creating a private claim against the FDA, which is prohibited.

Plaintiffs do not dispute that under the FDCA private litigants are expressly prohibited from suing to enforce compliance with the federal regulations. However, Plaintiffs contend that they are not attempting to enforce or to restrain violations of this Act, but rather to enforce California's legal requirements, under the Sherman Law, UCL, and FAL, which are identical to FDA regulations (Pl.s'. Opp'n at 13-14.)

Defendant's reliance in support of its argument on *Perez v. Nidek Co.*, 711 F.3d 1109 (9th Cir. 2013) is misplaced. In *Perez*, Plaintiffs claimed that Defendants failed to disclose the lack of FDA approval for a specific type of laser required for LASIK surgery. There, Plaintiffs brought suit with a claim for fraud by omission, something the court held existed *solely* by virtue of the FDCA requirements. *Perez* at 1119. The court stated that the existence of the federal enactments was a critical element in plaintiffs' case. *Id.* Those facts are distinguishable from the instant case. Here, Plaintiffs' claims are not dependent on the FDCA's existence. As Plaintiffs point out, the *Perez* court acknowledged that plaintiff was "not barred from bringing *any* fraud claim related to the surgeries, [but] he cannot bring a claim that rests solely on the non-disclosure to patients of facts tied to the scope of . . . approval." *Id.* (emphasis included.)

In the present case, Plaintiffs are not suing because Defendant's conduct violates the FDCA, rather, they are suing because Defendant's conduct allegedly violates California's Sherman Law, UCL, and FAL, all of which "could have imposed the exact same regulations even if the FDCA was never passed." *See Gustavson v. Wrigley Sales Company*, 961 F.Supp.2d 1100, 1119 (N.D. Cal. 2013).

In light of the foregoing, Defendants motion on this basis will be denied.

**C. Sufficiency of Pleadings under Rules 8(a) and 9(b)**

Federal Rule of Civil Procedure 8(a) typically governs pleading requirements and requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). However, a claim sounding in

fraud is subject to Rule 9(b)'s heightened pleading requirement that the plaintiff "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). Rule 9(b) requires that allegations of fraud be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal citations omitted). To satisfy Rule 9(b), the plaintiff must state the requisite "who, what, when, where, and how" of the misconduct he alleges. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (internal citations omitted). The plaintiff must also "set forth an explanation as to why the statement or omission complained of was false and misleading when made," which can be done by "identifying either (1) inconsistent contemporaneous statements or (2) inconsistent contemporaneous information (such as an internal report) that was made by or was available to the defendants." *Yourish v. California Amplifier*, 191 F.3d 983, 993-94 (9th Cir. 1999).

Rule 9(b)'s heightened pleading standards apply to claims for violations of the UCL, FAL, and Sherman Act. *See Brazil v. Dole Food Co., Inc.*, 935 F.Supp.2d 947 (N.D. Cal. 2013). Intentional misrepresentation and negligent misrepresentation are subject to the heightened pleading standards of Rule 9(b), which Plaintiffs do not dispute. *Rankine v. Roller Bearing Co. of America, Inc.*, 2013 WL 55802 (S.D. Cal. 2013).

### 1. Standing to Bring Claims Regarding Unpurchased Products

As addressed above, Plaintiffs lack standing to bring claims against Defendant's 107 other products which they did not purchase. Therefore, this Court will not address the issue of sufficiency regarding those claims and instead will focus only on the sufficiency of claims brought against Defendant's One Daily Multivitamin and Men's One Daily.

### 2. Claims Relating to Magnesium Stearate, Calcium Stearate, or any other Stearate/Steric Acid

Plaintiffs' FAC alleges that Defendant fraudulently omits the presence and use of "Magnesium Stearate, Calcium Stearate or any other Stearate/Stearic Acid" from its One Daily Multivitamin and Men's One Daily. (FAC ¶ 9, 42.) Defendant argues that this

1 | allegation lacks the particularity required by Rule 9(b)'s heightened pleading standard.
2 | (Def.'s Mot. Dismiss at 6.) Specifically, Defendant argues Plaintiff cannot show the
3 | "who, what, when, where, and how" if Plaintiff cannot plead the specific additive they
4 | allege exists within Defendant's products. Plaintiffs counter that they have sufficiently
5 | alleged that Defendant has hidden and continues to hide the use of "Magnesium Stearate,
6 | Calcium Stearate or any other Stearate/Stearic Acid" with the use of the term "vegetable
7 | lubricant" instead of the common name as required by the FDA regulations. (Pl.s' Mot.
8 | Dismiss at 7.) Plaintiffs then contend that Defendant chose to use this other name in order
9 | to mislead consumers.

10 |     Plaintiffs have not fully met the heightened pleading standard. Plaintiffs' allegation
11 | that Defendant's two products, One Daily Multivitamin and Men's One Daily, contain
12 | "Magnesium Stearate, Calcium Stearate or any other Stearate/Stearic Acid" fails to meet
13 | 9(b)'s heightened standard because it does not "give defendants notice of the particular
14 | misconduct which is alleged to constitute the fraud charge[s]." *Brazil v. Dole Food Co.,*
15 | *Inc.*, 935 F.Supp.2d 947 (N.D. Cal. 2013). Plaintiffs will need to specify which additives
16 | they are claiming are omitted from Defendant's products in order to meet 9(b)'s standard.
17 | It is not enough to simply state "or any other Stearate/Stearic Acid," as this does not give
18 | requisite notice to Defendant in order for it to defend claims against it.
19 |     In *Brazil v. Dole Food Co., Inc.*, 935 F.Supp.2d 947 (N.D. Cal. 2013) the court
20 | determined that the plaintiff's pleadings failed to meet the heightened pleading
21 | requirement because 1) it failed to specify which products were at issue in the case; 2) no
22 | precise nature of any alleged violations was stated; and 3) it did not specify which
23 | content on the labels plaintiff had relied upon and found misleading. *See Brazil v. Dole*
24 | *Food Co., Inc.*, 935 F.Supp.2d at 964. Plaintiffs in this case, in contrast to *Brazil*, have
25 | sufficiently plead the who, what, when, where, and how. They have stated the time period
26 | in which the alleged behavior ensued, described the alleged mislabeling at great length,
27 | with photos of the products' labels included, and argued why Defendant allegedly
28 | mislabels its products. (FAC ¶ 44, 46.)

Plaintiffs will be given leave to amend this claim with further facts concerning "any other stearate/stearic acid."

### 3. Plaintiffs' Have Plead their Claims Regarding Defendant's Misrepresentation of Whole Foods with Sufficient Particularity

Defendant argues that all of Plaintiffs' claims should be dismissed regarding the whole food content of Defendant's products, One Daily Multivitamin and Men's One Daily. In support of this argument, Defendant contends that Plaintiffs make vague claims such as the products containing "much less [whole foods] than customers reasonably expect" and that it is "*likely* that the products they bought did not provide the stated amounts." (Def.'s Mot. Dismiss at 7.)

Plaintiffs have sufficiently pleaded facts that the products do not contain vitamins and minerals strictly from whole food sources. Even if synthetically-produced minerals and vitamins were present at extremely low or negligible levels, Plaintiffs argument is sufficient to meet 9(b) because they contend that they were misled by a representation that *only* whole food sources were utilized. Any amount of synthetically-produced minerals or vitamins would be a misrepresentation according to this line of reasoning.

Further, Plaintiff alleges numerous times how they were misinformed and that "synthetic or processed nutrients were added to [Defendant's] products. (FAC ¶ 23.) Plaintiffs' basis for this argument is that "it is impossible to provide the amount of vitamins and minerals from the amount of whole foods that Defendant purports to use to obtain the levels of vitamins and minerals as labeled on its packages." (FAC ¶ 41.)

Finally, Defendant argues that Plaintiff should state facts about what the product actually contains. (Def.'s Mot. Dismiss at 7.) Plaintiffs do just this. Plaintiffs state there are synthetic, as well as whole food, sources of nutrients and minerals in the products. (FAC ¶ 94, 101, 109.)

In light of the foregoing, Defendants motion on the basis of failure to plead fraud with particularity will be granted in part and denied in part. Plaintiffs may amend the complaint to correct the deficiency noted.

## D. CONCLUSION

Based on the foregoing, Defendant's motion to dismiss Plaintiffs' First Amended Complaint is **GRANTED** in part and **DENIED** in part as follows:

    1. With respect to unpurchased products, Defendant's motion to dismiss is **GRANTED WITH LEAVE TO AMEND**.

    2. With respect to preemption, Defendant's motion to dismiss is **DENIED**.

    3. With respect to sufficiency of Plaintiffs' pleadings under Rule 9(b), Defendant's motion to dismiss is **GRANTED WITH LEAVE TO AMEND**.

    4. With respect to the sufficiency of Plaintiffs' Whole Foods claim, Defendant's motion to dismiss is **DENIED**.

    5. If Plaintiffs intend to file a Second Amended Complaint, they shall do so on or before **January 15, 2016**.

**IT IS SO ORDERED.**

Dated:  December 31, 2015

_____
Hon. M. James Lorenz
United States District Judge